IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MYRNA SUE HUNTER**, | Case No. 3:22-cv-1217-SI |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| **FEDEX CORPORATE SERVICES, INC.**, | |
| Defendant. | |

Christine Mascal, MASCAL LAW OFFICE, LLC, 2905 NE Broadway, Portland, OR 97232. Of Attorneys for Plaintiff.

Michael G. McClory, CABLE HUSTON LLP, 1455 SW Broadway, Suite 1500, Portland, OR 97201; and Gabriel P. McGaha and Barak J. Babcock, FEDERAL EXPRESS CORPORATION, 3620 Hacks Cross Road, Bldg. B-3rd Floor., Memphis, TN 38125. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

In 2002, FedEx Corporate Services, Inc. (FedEx) hired Myrna Sue Hunter (Hunter) as a sales representative.[1] On July 14, 2021, FedEx terminated Hunter's employment. Hunter was 65 years old. Hunter sued FedEx in state court, alleging both age and gender discrimination in violation of Oregon law. FedEx removed the case to federal court. FedEx now moves for summary judgment, arguing that Hunter was terminated for a legitimate, nondiscriminatory

---

[1] Hunter refers to her position as a "sales representative." FedEx refers to Hunter's position as an "account executive." This difference does not appear to be material.

reason. After oral argument, the Court allowed the parties to supplement the record to clarify certain factual and legal issues. For the reasons stated below, the Court grants in part and denies in part FedEx's motion for summary judgment. Hunter may proceed to trial on her claim of age discrimination but not on her claim of gender discrimination.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks omitted).

## BACKGROUND

Hunter worked for FedEx as a sales representative from 2002 until July 14, 2021, when FedEx terminated Hunter's employment. As noted, she was 65 years old. While employed by FedEx, Hunter managed approximately 100 customer accounts and reported directly to a district sales manager. A FedEx district sales manager reports directly to a regional managing director. From January 2019 to October 2020, Hunter's district sales manager was Heather Corbett.

ECF 18-2 at 13. From January 2021 until Hunter's employment ended, Shima Nejad was

Hunter's district sales manager. ECF 22-1 at 5. At all relevant times, Beth Trahan was the

regional managing director responsible for supervising Heather Corbett and Shima Nejad. ECF

18-3 at 2; 18-4 at 2.

Before the COVID-19 pandemic, FedEx sales representatives visited customers to make

sales calls. During the pandemic, sales representatives contacted customers by telephone, email,

and videoconference. During this time, FedEx expected its sales representatives like Hunter to

make about eight telephone or video sales calls per day. ECF 18-2 at 16-17. FedEx encouraged

its sales representatives to "preplan" sales contacts by entering relevant customer information

into FedEx software called "iSell." ECF 18-2, at 18-19. After a sales representative completed

the customer call, the representative would check a box in iSell to indicate that the call was

made. *Id.* at 42.

FedEx has two written employment policies relevant here: the Acceptable Conduct

Policy and the Falsification of Company Records Policy. Hunter was aware of both. ECF 18-8

at 1; 18-9 at 3. Acceptable conduct at FedEx requires honesty in employees' dealings both with

customers and FedEx employees. ECF 18-6 at 1. The Acceptable Conduct Policy states that,

among other things, violations of company policies or departmental rules may be misconduct

subject to discipline. *Id.* That policy also provides that FedEx will thoroughly investigate and

document cases of misconduct and that violations may lead to corrective action based on the

nature and severity of the conduct. *Id.* The policy also explains that an employee may be

terminated, after investigation, for *deliberate* falsification of FedEx documents, including but not

limited to, sales calls reports. *Id.*

FedEx's Falsification of Company Records Policy prohibits *intentional* falsification or

other forms of dishonesty or unethical conduct. ECF 18-7 at 1. Examples of falsification include

PAGE 3 – OPINION AND ORDER

deliberate acts of erroneous data system entries, such as misrepresenting customer calls in iSell. *Id.* This policy also provides that FedEx management will investigate allegations of misconduct. *Id.* Under this policy, an investigation is intended to determine whether an employee: (1) knew or should have known that the statement, representation, or omission was false at the time it was made; or (2) acted with the intent to deceive, misrepresent, or conceal facts or wrongdoing. FedEx's policy states that termination, even without warning, is an acceptable consequence for falsification. *Id.*

In April 2021, Nejad discussed with Hunter the fact that Hunter's sales were not meeting requirements. By June 2021, Hunter's sales had not improved, and Nejad prepared for another coaching session with Hunter by reviewing a selection of Hunter's iSell records. ECF 18-5 at 3. During this review, Nejad noticed discrepancies in Hunter's iSell documentation. ECF 22-1 at 3. Nejad discussed these discrepancies with her regional managing director, Trahan, who told Nejad to keep investigating. *Id.* Nejad investigated Hunter's iSell documentation by anonymously contacting 21 randomly selected customers of Hunter. ECF 18-5 at 3-6;[2] ECF 22-1 at 4-8. According to Nejad, she learned that Hunter's information in iSell was incorrect for nine of those customers. ECF 18-5 at 3; ECF 22-1 at 10.

On July 14, 2021, Nejad informed Hunter by telephone that she was fired. The parties dispute what was said on this call. FedEx states that Nejad informed Hunter the termination was because Hunter falsified iSell records. ECF 18-3 at 5. Hunter denies that she was told the reason for her termination during this conversation. ECF 18-12 at 2.[3] Nejad also sent Hunter a letter on

---

[2] Nejad describes contacting 22 customers, although her chart shows that she contacted 21 customers. FedEx later clarified that Nejad contacted 21 customers. *See* ECF 29 at 2 n.1.

[3] The Court finds this this specific factual dispute is not material to the pending motion.

July 14, 2021, notifying her that her employment was terminated for violating the "Falsification of Company Records" policy. ECF 18-5 at 9. The letter provided no details about Hunter's purported violation.

Hunter requested review of her termination through FedEx's internal review process. ECF 18-11. At step one of that process, Hunter met with Trahan, Nejad, and Mary Jo Arnold (from FedEx's human resources department). ECF 18-11 at 4. Trahan upheld the termination, concluding that there was sufficient evidence that Hunter had falsified company records. *Id.* Hunter continued to protest her firing. At step two of the FedEx review process, FedEx's Vice President for Sales James Collier upheld the decision to terminate Hunter's employment based on the company's falsification policy. *Id.* at 5. At this point, FedEx's decision to terminate Hunter's employment became final. *Id.*

Hunter received the termination letter dated July 14, 2021. FedEx, however, refused to tell Hunter any details about the alleged falsification. Hunter first learned during a hearing regarding her application for unemployment benefits that the alleged falsification related to her entries in iSell. During that hearing, Hunter denied marking as complete any call in iSell that she did not actually perform. ECF 22-5 at 2. Hunter then filed this lawsuit.[4]

In this case alleging age and gender discrimination, FedEx presented uncontested evidence of what it refers to as three instances of "comparator evidence" related to employment actions taken by Nejad. ECF 18-14, 18-15, 18-16. The first comparator involved a male sales

---

[4] After Hunter filed this lawsuit, FedEx compared Hunter's iSell entries identified by Nejad against telephone records. ECF 29-1 at 2. FedEx concluded that Hunter in fact falsified 41 of 50 iSell entries. ECF 29-1 at 2, 4-8. At oral argument, Hunter denied this allegation and FedEx's conclusion.

PAGE 5 – OPINION AND ORDER

representative, whom the Court refers to as JR.[5] He was 62 years old when FedEx terminated his employment. ECF 18-14 at 2. After seeing that JR was not meeting his sales goals, his district manager, Nejad, investigated JR's iSell entries and found call notes that conflicted with customer's statements about their contacts with JR. ECF 18-14 at 5. With approval from FedEx's human resources department, in February 2021, Nejad fired JR for falsifying iSell records. *Id.* at 1.

The second comparator also involved a male employee, GY, who was 46 years old when he was fired by FedEx from his position as a sales representative. ECF 18-15 at 1. After receiving information that customers had trouble reaching GY, Nejad contacted these customers and learned that they had not been contacted by GY on the dates that GY stated in iSell that he had spoken with them. ECF 18-15 at 5. FedEx terminated GY's employment in March 2021, for violating FedEx's falsification policy. *Id.*

The third comparator, KT, is a female sales representative who was 26 years old when Nejad submitted a request for the termination of her employment. ECF 18-16 at 1-2; ECF 18-17 at 2. After noticing some discrepancies in KT's iSell documentation, Nejad contacted KT's customers to verify her iSell documentation and learned that KT had falsified 11 out of 18 calls. ECF 18-16 at 5. In May 2021, KT submitted her resignation before FedEx's human resources group had approved Nejad's request for termination of KT's employment. ECF 18-17 at 2.

After FedEx terminated JR's employment in February 2021, Nejad held a team call and reminded the employees in attendance not to falsify iSell records, even if they miss their required eight calls per day. After FedEx terminated GY's employment in March 2021, Nejad held

---

[5] In the interest of the comparators' privacy, the Court uses only the comparators' initials to identify them.

another call to reiterate FedEx's falsification policy. Hunter does not deny participating in these

calls. FedEx replaced Hunter with KH, who was 26 years old when she filled Hunter's sales

position. ECF 22-8. When she was hired and throughout her employment at FedEx, KH earned

much less than Hunter's compensation from FedEx.[6] ECF 26 at 2, 26-1 at 16.

## DISCUSSION

### A.  Age Discrimination

Hunter first alleges age discrimination under Oregon's anti-discrimination law, Oregon

Revised Statutes (ORS) § 659A.030. This law makes it unlawful for an employer to

"discriminate against [an] individual in compensation or in terms, conditions, or privileges of

employment," because of that individual's "race, color, religion, sex, sexual orientation, gender

identity, national origin, marital status or age, if the individual is 18 years of age or older." ORS

§ 659A.030(1)(b).

In federal court, Oregon age discrimination claims are analyzed at summary judgment

under the *McDonnell Douglas* burden-shifting framework. *See Dawson v. Entek Int'l*, 630

F.3d 928, 934-35 (9th Cir. 2011) (concluding that the *McDonnell Douglas* burden-shifting

framework is federal procedural law and thus applies to state claims when the basis of the federal

court's jurisdiction is diversity); *see also Robillard v. Opal Labs, Inc.*, 428 F. Supp. 3d 412, 435

(D. Or. 2019) (stating that age discrimination claims under Oregon law follow the *McDonnell*

*Douglas* burden-shifting framework). Under this framework, a plaintiff must first establish a

prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802

(1973). A plaintiff may do so either with direct evidence of discriminatory intent or on a

presumption arising from the factors recognized in *McDonnell Douglas*. *Wallis v. J.R. Simplot*

---

[6] KH stopped working at FedEx on June 8, 2023. ECF 26-1 at 16.

*Co.*, 26 F.3d 885, 889 (9th Cir. 1994). Direct evidence is evidence that, "if believed, proves the

fact of discriminatory animus without inference or presumption." *Vasquez v. Cnty. of Los*

*Angeles*, 349 F.3d 634, 640 (9th Cir. 2003) (cleaned up). Alternatively, a plaintiff may establish

a prima facie case through circumstantial evidence recognized under the federal Age

Discrimination in Employment Act (ADEA) by showing that she is:

> (1) at least forty years old, (2) performing [her] job satisfactorily,
> (3) discharged, and (4) either replaced by a substantially younger
> employees with equal or inferior qualifications or discharged under
> circumstances otherwise "giving rise to an inference of age
> discrimination."

*Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (quoting *Coleman v.*

*Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000)). "The requisite level of proof necessary

to establish a *prima facie* case for . . . ADEA claims on summary judgment is minimal and does

not even need to rise to the level of a preponderance of the evidence." *Wallis,* 26 F.3d at 889.

After a plaintiff shows a prima facie case, the burden shifts to the employer to articulate a

nondiscriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S.

at 802. If the defendant provides a nondiscriminatory reason, the burden returns to the plaintiff to

show that the defendant's nondiscriminatory reason is mere pretext. *Id.* at 804. This shifts only

the burden of production because the ultimate burden of persuasion always remains with the

plaintiff. *Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1123-24 (9th

Cir. 2000). As with the prima facia case, a plaintiff may show that a defendant's reason is

pretextual with direct or indirect evidence. *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237

F.3d 1080, 1093-94 (9th Cir. 2001).

For purposes of this motion, FedEx does not dispute that Hunter has met her burden of

showing a prima facie case of age discrimination. ECF 18 at 19. FedEx, however, argues that

Hunter's termination resulted from a legitimate, nondiscriminatory reason: Hunter's falsification

of iSell sales records, an offense that supports termination of employment without warning under FedEx's policies. The Court finds that FedEx has articulated a legitimate, nondiscriminatory reason sufficient to satisfy the second step of the *McDonnell Douglas* framework. Thus, the Court turns to the third step, the question of pretext.

As noted, pretext may be established in one of two ways: "(1) indirectly by showing that defendant's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable; or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Chuang*, 225 F.3d at 1127. Direct evidence of pretext need only be "very little." *Chuang*, 225 F.3d at 1128 (quotation marks omitted). The Ninth Circuit has "repeatedly held that a single discriminatory comment by a plaintiff's supervisor or decisionmaker is sufficient to preclude summary judgment for the employer." *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1039 (9th Cir. 2005); *see also Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1409 (9th Cir. 1996) (holding that "very little . . . evidence is necessary to raise a genuine issue of fact regarding an employer's motive; any indication of discriminatory motive . . . may suffice to raise a question that can only be resolved by a factfinder" (second alteration in original) (quotation marks omitted)); *Turcotte v. ABM Janitorial Servs.*, 2011 WL 1154486, at *3 (W.D. Wash. Mar. 25, 2011) (concluding that a supervisor's comment that "because of [plaintiff's] age, [she] would be able to retire and collect [her] Social Security," made during a meeting called to discuss plaintiff's termination, was enough to defeat summary judgment). "To show pretext using circumstantial evidence, in contrast to direct evidence, a plaintiff must put forward specific and substantial evidence challenging the credibility of the employer's motives." *Mayes v. WinCo Holdings, Inc.*, 846 F.3d 1274, 1282 (9th Cir. 2017) (quotation marks omitted); *see also Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1113 (9th Cir. 2011).

Notwithstanding the Ninth Circuit's statement in *Dominguez-Curry* about a "single discriminatory comment by a plaintiff's supervisor or decisionmaker," the Ninth Circuit also has stated that a "'stray remark' that is 'uttered in an ambivalent manner and [is] not tied directly to [the plaintiff]'s termination is insufficient to create an inference of discriminatory motive.'" *Hartung v. Cae Newnes, Inc.*, 229 F. Supp. 2d 1093, 1100 (D. Or. 2002) (quoting *Merrick v. Farmers Ins. Grp.*, 892 F.2d 1434, 1438-39 (9th Cir. 1990)). Thus, comments that are "very general" and do not "relate in any way, directly or indirectly," to the termination of Hunter's employment cannot create an inference of discriminatory motive that by itself is sufficient to defeat summary judgment in the employer's favor. *See Nesbit v. PepsiCo, Inc.*, 994 F.2d 703, 705 (9th Cir. 1993). Yet when decision-makers have made discriminatory remarks "regarding assignments, promotions, or policies," even if "the remarks *alone* might [be] insufficient to withstand summary judgment . . . the remarks [are] certainly relevant and, along with other substantial evidence," and may create "a strong inference of intentional discrimination." *See Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995) (emphasis in original). In *Mangold*, the Ninth Circuit considered remarks including "we want fresh blood" and "older employees, unfortunately don't take advantage of all the opportunities" because they expressed a preference for youth in deciding assignments, promotions, or policies. *Id.*

Regarding pretext, Hunter states that despite her "impressive and lengthy" career at FedEx, that company terminated her employment without warning. She emphasizes that the falsification policy requires *intentional*, *knowing*, and *deliberate* falsification. Hunter argues that FedEx did not engage in a sufficient investigation to determine Hunter's intent. Thus, according to Hunter, whether FedEx's assertion of a nondiscriminatory motive is mere pretext presents a question for the jury.

Hunter provides no declaration in support of her summary judgment motion that expressly denies intentional, knowing, or deliberate falsification.[7] Instead, she provides an excerpt from her sworn testimony at her unemployment hearing in which she states that she did not mark calls completed in iSell that were not actually completed.[8]

Hunter also offers the Declaration of Heather Corbett. ECF 22-3. As noted, from January 2019 to October 2020, Corbett was Hunter's district sales manager and Trahan was the regional managing director to whom Corbett reported. According to Corbett, "Beth Trahan often spoke about how FedEx's pension plans for older employees cost the company a lot of money."[9] ECF 22-3 at ¶ 10. Corbett also states that in the fall of 2020, she "noticed Beth Trahan exhibited a noticeably different approach towards Sue Hunter." *Id.* ¶ 9. Although FedEx denies that Trahan made these statements, at this stage of the litigation, the Court must view the evidence in the light most favorable to Hunter and may not assess a witness's credibility. The Court also notes that FedEx terminated Corbett's employment about nine months before it fired Hunter.

---

[7] At oral argument, Hunter's counsel stated that Hunter made such a denial during her deposition but did not cite or provide any deposition excerpt. The Court could not locate such a denial in its review of the excerpts of Hunter's deposition in the record. Hunter also did not include such a denial in her supplemental declaration.

[8] In supplementing the record, Hunter provides a declaration in which she states that she sometimes used her FedEx-issued cell phone to make calls to customers. ECF 27. She highlights some cell phone calls that she contends shows that she made some of the disputed customer calls underlying FedEx's falsification charges. ECF 26-1 at 5-14. Except for one 10 second call, the calls identified by Hunter, however, were not made on dates that were on the chart submitted by Nejad or, for one exhibit, to a customer not disputed by Nejad. Thus, they do not create a triable issue.

[9] At oral argument, Hunter contended that FedEx terminated her employment to replace her with a younger, less expensive employee. Hunter has provided evidence showing that her replacement, a much younger employee, was paid significantly less than Hunter. ECF 26-1 at 16.

To show pretext *directly*, Trahan's remarks would need to "prove[ ] the fact of discriminatory animus without inference or presumption." *Vasquez*, 349 F.3d at 640 (quotation marks omitted). A "stray" comment is insufficient, although it may be considered circumstantial evidence. *See Turney v. Hyundai Const. Equip. USA Inc.*, 482 F. App'x 259, 260-61 (9th Cir. 2012) (affirming grant of summary judgment to defendant on ADEA claim because alleged ageist comments were merely "stray remarks"); *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918-19 (9th Cir. 1996) (concluding that "old timers" comment could not "create an inference of age discrimination"). Additionally, "very general" comments that are unrelated—either directly or indirectly—to termination are circumstantial evidence of discriminatory animus. *See Nesbit*, 994 F.2d at 705; *see also Merrick*, 892 F.2d at 1438 (stating that "stray remarks" unrelated to the termination decision process cannot establish discrimination). Trahan's remarks require inference to prove discriminatory motive and were not directly connected to Hunter's termination. Thus, they are not direct evidence. They are, however, circumstantial evidence of pretext the Court may consider.

Evidence that a fired older employee was replaced with a significantly younger employee also may be circumstantial evidence of age discrimination. *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313 ("[T]he fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class."); *see also Earl*, 658 F.3d at 1116-17 (applying the *O'Connor* holding to evidence of pretext in an age discrimination claim). Because Hunter's replacement was 26 years old and Hunter was 65 years old when FedEx terminated Hunter's employment[10], this is a "reliable indicator of age discrimination." *Id.*

---

[10] Hunter offered an unauthenticated document that lists limited personal information about KH, the employee who replaced Hunter. ECF 22-8. At oral argument, Hunter's counsel

To show pretext indirectly, it is also appropriate to look at relevant comparators. "A showing that the [defendant] treated similarly situated employees outside [the plaintiff's] protected class more favorably would be probative of pretext." *Vasquez*, 349 F.3d at 641; *see also Earl*, 658 F.3d at 1113 ("A plaintiff may raise a triable issue of pretext through comparative evidence that the employer treated younger but otherwise similarly situated employees more favorably than the plaintiff."). "It is not enough for employees to be in similar employment positions; rather, the plaintiff and the comparator employee must be similarly situated in all material respects. Employees are similarly situated if they have similar jobs and display similar conduct." *Weil v. Citizens Telecom Servs. Co., LLC*, 922 F.3d 993, 1004 (9th Cir. 2019) (cleaned up).

Hunter, however, offers no evidence of similarly situated employees outside her protected class who were treated differently. Indeed, to the contrary, FedEx offers evidence of one similarly situated employee outside of Hunter's protected age class who was treated *the same*, which supports FedEx's legitimate reason and detracts from Hunter's claim of pretext.[11]

_____

represented that Hunter was replaced by a much younger employee. In supplementing the record, Hunter added a declaration that states that KH replaced Hunter and attaches a "monthly salary confirmation" providing additional human resources data about KH, including her date of hire, salary, and date of employment separation from FedEx. At summary judgment, the Court may consider "evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial, such as by live testimony." *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016); *see also Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 964 n.7 (9th Cir. 2011) ("Rule 56 is precisely worded to exclude evidence only if it's clear that it cannot be presented in an admissible form at trial."); *cf.* Fed. R. Civ. P. 56(c)(2) (permitting a party to "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence"). Based on the more relaxed evidentiary requirements at this stage, the Court accepts this evidence of the age of Hunter's replacement.

[11] FedEx also argues that two more employees, JR and GY, are comparator employees who defeat Hunter's claim of pretext because they are younger than Plaintiff. Those employees, however, were over the age of 40 at the time FedEx terminated their employment, and thus were within the class of persons protected by age discrimination laws. Although not probative

At this stage of the lawsuit, the analysis comes down to three pieces of circumstantial evidence in Hunter's favor. The first is Corbett's declaration that Trahan, her regional managing director at FedEx, "often spoke about how FedEx's pension plans for older employees cost the company a lot of money." The second is that FedEx's own policies require evidence that an employee, like Hunter: (1) *knew or should have known* that the statement, representation, or omission was false at the time it was made; or (2) acted with the *intent to deceive, misrepresent, or conceal* facts or wrongdoing. FedEx conducted a limited investigation, speaking *only* with Hunter's customers and not ever asking for any explanation from Hunter.[12] FedEx argues that its investigation need not have been "perfect" and could have been "flawed" as long as FedEx had a good faith basis for its belief. Having never questioned Hunter or disclosed to her the reason for her termination, however, it is a question for the jury whether FedEx had a good faith basis to conclude that Hunter acted with the intent to deceive or knew or should have known that the statements or omissions were false when made. The third is evidence that Hunter's replacement at FedEx was significantly younger than her. The replacement evidence, the lack of investigation into Hunter's knowledge or intent, and Corbett's declaration explaining Trahan's purported discriminatory intent, when Trahan was Nejad's supervisor during the relevant time, create a triable issue on whether FedEx's reliance on its policies as the basis for its termination of

---

comparators to *show* pretext because they were inside Hunter's protected class, *see Earl*, 658 F.3d at 1113, their firing does not show that FedEx was *not* firing older employees on pretextual grounds.

[12] With its reply and supplemental briefing, FedEx offers evidence of the further investigation it conducted *after* it terminated Hunter's employment. FedEx argues that this evidence shows that Hunter inputted more than nine incorrect entries. This investigation, however, occurred after Hunter's termination and thus is irrelevant to FedEx's investigation that resulted in Hunter's termination and the issue of pretext. The Court saves for another day the question of whether this evidence is admissible at trial to show that Hunter in fact made numerous incorrect entries in iSell.

Hunter's employment is mere pretext. As noted, evidence of pretext does not require much. *See*

*Chuang*, 225 F.3d at 1128. The Court denies FedEx's motion for summary judgment against

Hunter's claim of age discrimination.

## B.  Gender Discrimination

Hunter also alleges she was terminated because of her gender. Oregon law prohibits an

employer from discharging an employee because of sex or gender. ORS § 659A.030(1)(a).

Courts analyze disparate treatment claims of gender discrimination under the same *McDonnell*

*Douglas* burden-shifting framework. *Dawson*, 630 F.3d at 934-35.

To establish a prima facie case for gender discrimination, a plaintiff must show:

> (1) he or she belongs to a protected class; (2) he or she qualified
> for his or her position or was performing according to his or her
> employer's legitimate expectations; (3) he or she suffered an
> adverse employment action; and (4) similarly situated individuals
> outside of the protected class were treated more favorably.

*Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008); *Godwin v. Hunt Wesson, Inc.*, 150

F.3d 1217, 1220 (9th Cir. 1998). FedEx argues that Hunter abandoned her gender discrimination

claim during her deposition. The following took place at Hunter's deposition:

> HUNTER: I was replaced because of age, not gender.
>
> ATTORNEY: Okay. So you don't believe you were—you don't
> believe you were discriminated against based on your gender?
>
> HUNTER: Correct.

ECF 18-2 at 28 ¶¶ 20-25. In responding to FedEx's motion for summary judgment against

Hunter's claim based on gender discrimination, Hunter did not directly respond to FedEx's

recitation of this testimony. Hunter stated, without any citation to record evidence, that she has

offered proof that she was treated less favorably than similarly situated individuals outside her protected class. Hunter also cited no evidence of similarly situated employees.[13]

Indeed, the only evidence in the record on this issue is that two similarly situated male employees, JR and GY, were fired for the same conduct that FedEx gave for terminating Hunter's employment. Not only does the record show that Hunter herself does not believe that she was discriminated against based on gender, Hunter fails to meet her burden of showing a prima facie case of gender discrimination.[14] The Court grants FedEx's motion for summary judgment against Hunter's claim of gender discrimination.

## CONCLUSION

The Court GRANTS IN PART and DENIES IN PART Defendant's Motion for Summary Judgment (ECF 18). Plaintiff may proceed to trial only on her claim of age discrimination. The parties are directed to contact the Courtroom Deputy to schedule a telephone conference for the purpose of setting a trial date.

**IT IS SO ORDERED**.

DATED this 9th day of November, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

---

[13] In the factual background section of her brief, Hunter refers to a statement that *she* made at deposition that "[h]istorically men stay employed by defendant company longer than women, and women are required to be young and beautiful in their sales position." ECF 22-4 at 24. This statement, however, provides no evidence about similarly situated employees, who must be similarly situated in all "material respects" and "have similar jobs and display similar conduct." *Weil*, 922 F.3d at 1004. Hunter's deposition testimony, thus, is insufficient to create a genuine issue for trial on this point.

[14] Hunter also does not offer any evidence of pretext for her gender discrimination claim. She states that FedEx's purported legitimate discriminatory reason for terminating her employment was "simply a guise to cover for what is clearly age discrimination." ECF 22 at 13.